UNITED STATES of America,
Plaintiff,

v.

John C. HARMEL, Defendant.

No. CR72-4027.

United States District Court,
D. South Dakota, S. D.

Aug. 9, 1973.

Robert G. Renner, Special Asst. U. S. Dist. Atty., Minneapolis, Minn., for the plaintiff.

Laird Rasmussen, of Dana, Golden, Moore & Rasmussen, Sioux Falls, S. D., and Bruce O. Robinson, Nampa, Idaho, for the defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

John C. Harmel has been charged in a three-count indictment with wilfully, knowingly and unlawfully making and subscribing federal income tax returns for the calendar years 1967, 1968, and 1969 which contained written declarations that they were made under the penalties of perjury and which he did not believe to be correct as to every material matter, in violation of 26 U.S.C. 7206(1). The indictment alleges the following discrepancies for the three years in question: (1) in 1967, the defendant reported a taxable income of $53,105.93, whereas he knew that his income was in the amount of $66,568.20; (2) in 1968, the defendant reported a taxable income of $57,027.00, whereas he knew that his taxable income was in the amount of $64,393.38; (3) in 1969, the defendant reported a taxable income of $59,424.00, whereas he knew that he had taxable income in the amount of $72,220.50. The defendant entered a plea of not guilty to all three counts and subsequently, upon defendant's signed waiver of a jury trial and consent thereto by the United States Attorney for the District of South Dakota, he was tried to the court without a jury. Upon the evidence adduced, this court makes the following:

## FINDINGS OF FACT

Dr. Harmel is a dentist who had been practicing in the city of Huron, South Dakota, since 1950. Until 1957, he practiced in a partnership with another dentist. Since Dr. Harmel was without the benefit of a business or accounting background, his partner's wife kept all the

books and records. When he branched out on his own in 1957, Dr. Harmel adopted the bookkeeping system utilized by his partner's wife.

Dr. Harmel's bookkeeping system was relatively simple. Each patient would be assigned a patient card. Upon that patient card would be a record of the work done on the patient, the charge assessed, and the payment made. At the beginning of each week, the dental assistant-receptionist would "pull" those cards of patients who were scheduled for appointments during the week. She would place a rubber band around the cards for each day and place the packets of cards in the first bin of a wooden cardholder which had been constructed by Dr. Harmel. When each patient came into the office, she would give that patient's card to the Doctor, who would record the work done and the amount charged. If further work had to be done on the patient, the card would then go into the third bin of the cardholder. The fourth bin was reserved for cards of patients who needed emergency work done and who were placed on a "will-call" basis so that they received the benefit of any cancellations. Whenever a patient made a payment, that payment was recorded by the dental assistant-receptionist on the patient card and the patient card was placed in the second bin of the cardholder.

At the end of every week, Dr. Harmel removed the cards upon which payment had been recorded from the payment bin and took them home for purposes of posting payments to a "day book." During Dr. Harmel's extended vacation periods, his dental assistant-receptionist would compile a list containing the names of those who had made payments during the period and the amounts of those payments, which list would be placed on Dr. Harmel's desk for posting when he returned. Dr. Harmel, his wife, his daughter, Jackie, and his sons Jeffrey and John, completed this posting at one time or another during the years in question. It was from these daybooks

that Dr. Harmel prepared his summary sheet which went to the accountant for purposes of preparing the annual income tax return.

Dr. Harmel handled all the receipts of his dental practice. He took checks and cash home with him every day. He never deposited currency and testified that he always used it for the purposes of paying household expenses. A large number of checks were never deposited but were either presented to merchants for the purpose of purchasing merchandise or cashed at the bank. The doctor was in the habit of listing these undeposited checks which were cashed at the bank on the back of deposit slips and saving the deposit slips.

In 1969, Dr. Harmel paid over $31,000 for the purchase of certain investment instruments. The payments were made completely in cash.

The Internal Revenue Service commenced its investigation of Dr. Harmel's recordkeeping system on May 20, 1970. Investigators compared patient cards for the three years in question to the appropriate daybooks. It was discovered that 1735 entries appearing on the patient cards were not transferred to the daybooks, which entries amount to a monetary omission of $33,624.15 for the three years. At the request of I.R.S. agents, Dr. Harmel went through the daybooks and indicated which members of his family had made the daybook entries for the three year period. As a result, it was determined that 437 omissions were attributable to Dr. Harmel, 192 to his son Jeffrey, and the remaining to the other members of his family. When questioned as to the reasons for the omissions, Dr. Harmel's responses were varied. At one time or another during the course of the investigation, Dr. Harmel responded (1) that his employees may have been stealing from him; (2) that his son Jeff was undependable and responsible for the omissions; (3) that his dental assistant, Dianna Dague, failed to file the patient cards in the correct bin and was therefore responsi-

ble; (4) that he was tired on weekends and therefore neglected the posting; (5) that he frequently forgot to do the posting; (6) that he knew the proper amounts to be posted, but he did not know to whom to credit those amounts and therefore refrained from posting; (7) that the omissions only occurred over vacation periods and resulted from the failure of his dental assistant to properly account for payments received.

## CONCLUSIONS OF LAW

The defendant admits underreporting his income for the three years in question and admits the materiality of those deficiencies. His defense is solely based upon the contention that the underreporting was not wilful.

■■ Proof of intent required by 26 U.S.C. Sec. 7206(1) can be accomplished by circumstantial evidence. United States v. Null, 415 F.2d 1178, 1181 (4th Cir. 1969). It is clear that the factual evidence presented by the Government and the logical inferences arising therefrom support a conclusion, beyond a reasonable doubt, that the defendant wilfully made income tax returns for the three years in question which he did not believe to be correct as to every material matter.

Although he delegated some of the duties, the defendant was in complete control of his recordkeeping system. He formulated the amount to be charged and recorded it on the patient card. He was in a position to supervise his dental assistants to assure himself that payments were being recorded and that these payment records were made available for posting into the daybooks. He picked up the patient cards at the end of the week and took them home to be recorded in the daybooks. He kept the daybooks in his own home and was in a position to notice the frequent clumps of blank pages (7 weeks in 1969) in the daybooks. And yet, he could not satisfactorily explain the 1735 entries that had been omitted from the daybooks, entries totaling $33,624.15.

Dr. Harmel contends that, where a patient was scheduled for multiple treatments during a period of one week, his dental assistant, upon recording payment for the first treatment, would file the patient card in the "further work" bin rather than in the "payment received" bin and that the entries on those cards were never posted in the daybooks. And yet, both his former dental assistants, Mrs. Dempster and Dianna Dague, emphatically and convincingly insisted that if payments were made the cards were placed in the correct bin, regardless of the treatment status of the patient.

It is the defendant's contention that he was in the habit of posting only the last entry on the patient cards and that, where patients paid twice in one week, the former payment was inadvertently omitted from the daybook. It strains the imagination to accept the contention that a dentist, who had been practicing as long as Dr. Harmel had, who had done the work on the patients, was in possession of the money, had the patient card in front of him and was doing the posting, would not see and remember multiple payments.

The defendant attempted to rebut the inference of intent arising from the number and size of the omissions by insisting that his son, Jeffrey, whom Dr. Harmel had on occasion trusted with the responsibility of posting, was responsible for the omissions. However, the statements of Jeffrey, Jacquelin and John Harmel, the children of Dr. Harmel, which statements were introduced by the Government at trial, specifically deny omitting the posting of any items of income appearing on the patient cards. While the defendant testified that he had delegated to Jeffrey the responsibility for posting and that he was careless, analysis of the daybooks reveals that omissions occurred only 192 times when Jeffrey was posting as against 437 times when the defendant, himself, posted. I think the conclusion is clearly warranted that whatever omissions can

be attributed to other family members resulted not from their negligence but from the actions of the defendant in intentionally withholding those patient cards from them.

Dr. Harmel contended that the periods during which receipts were omitted from the daybooks coincided with his extended vacation periods. He contends that this coincidence accounts for his failure to take special note of the clumps of blank pages in the daybooks. He also contends that his assistants failed to set aside patient cards on which payments had been recorded during these periods, thus accounting for numerous omissions from the daybooks. First, the defendant failed to establish the coincidence of "blank page" periods with vacation periods, thus weakening his premise. Second, Dianna Dague testified that she had been instructed by Dr. Harmel to compile lists of patient payments made during his vacation periods, which lists she compiled and then refiled the patient cards in the general file. Dr. Harmel testified that he never saw these lists, or if he did see them, he took no special note of them. This testimony is rendered suspect by one of the vacation lists introduced into evidence. If the defendant had never seen or had never realized the purport of the list, one wonders how ten of the checks included on the list were unreported but twenty-nine had been posted and reported (at a time when the defendant was doing the posting).

Even assuming that other members of Dr. Harmel's family were responsible for many of the omissions *and* that his dental assistant failed to place the patient cards upon which payments had been recorded in the correct bin, it is impossible to believe that the defendant did not remember certain patient payments when he was doing the posting.

The Government presented numerous patient checks which had been cashed by Dr. Harmel in payment for merchandise and which had been omitted from the daybooks while he was posting receipts. Defendant's compiled lists of cashed but undeposited checks were introduced into evidence. On these lists, Dr. Harmel would record the amount of the check and the names of the patients who had made them out. Yet many of these patient payments were omitted from the daybooks during periods in which the defendant was doing the posting. On four different occasions during 1967, Dr. Harmel listed undeposited checks on weekends during which he made no postings whatsoever.

Although Dr. Harmel's failure to deposit currency and checks received in payment for his services and his practice of paying expenses and making purchases in cash rather than through a checking account do not, in and of themselves, give rise to an inference of intent, they are perfectly consistent with the defendant's scheme to shave receipts from his reported income.

Although it is true that Dr. Harmel cooperated fully with the I.R.S. investigators and that he filed amended returns, these fact do not negate the inference that he acted with the requisite intent.

This court hereby finds the defendant, John C. Harmel, guilty beyond a reasonable doubt of the charges contained in Counts I, II and III of the indictment. The sentencing of the defendant will be reserved until receipt by this court of a presentence report from the federal probation office.

This memorandum decision will constitute the findings of fact and conclusions of law required by Rule 23(c) of the Federal Rules of Criminal Procedure.